UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Jessica Grundstrom,

                      Plaintiff,

vs.                                              MEMORANDUM OF LAW
                                                IN OPPOSITION TO
                                                DEFENDANTS' SUMMARY
                                                JUDGEMENT MOTION

Carrier Coach, Inc.,                                Index:   13-cv-832A(F)
Allen Miller

                      Defendants.
_____

## **PRELIMINARY STATEMENT**

      The defendants, Carrier Coach, Inc., and Allen Miller, claim that Jessica Grundstrom had a consensual sexual relationship with Allen Miller, the owner and operator of the defendant Carrier Coach, Inc.  Defendants further urge that the complaint contains outrageous allegations to bolster her theory of liability and that the plaintiff, Jessica Grundstrom, and her attorney, Willard M. Pottle, Jr., simply fabricated allegations that are patently false in a blatant attempt to embarrass Allen Miller and enrich herself at the expense of her former employer.

      The Statement of Facts and Willard M. Pottle, Jr.'s Affirmation clearly set forth the true facts and spell out causes of action which are disputed by the defendants' conclusory salacious allegations.  Allen Miller is a predator.  He frequents stip clubs, including The Colony Lounge strip club in Buffalo.  There he has preyed on several employees, strippers and then Jessica Grundstrom, a waitress at The Colony Lounge.  He had great success in luring women into sexual relationships at The Colony Lounge by impressing them with the fact that he owns and operates Carrier Coach, Inc., a multi-million dollar business with 500 employees, that he uses to provide jobs in exchange for the sexual encounters that he has with the employees by providing them with jobs or money or cars.  He has paid off women to keep quiet about his activities and has threatened them if they disclose the relationship.

      Allen Miller employs Samantha Grimmer, who is head of Human Relations, who is the

sister of Stephanie Grimmer, a stripper at The Colony Lounge, that Allen Miller hired and had oral sex with for well over a year and then paid her off to be quiet. He also had sexual relations with another stripper in the club. Allen Miller was 68 years old when he returned to The Colony Lounge and pursued Jessica Grundstrom, who was then approximately 27 years old, over 40 years his junior. Jessica was working at The Colony Lounge as a waitress. Prior to that she was cleaning houses with her mother. That started when she was 16 years old and had an out of wedlock child. She quit school at that time and only has an education to the tenth grade and does not have a GED.

     Allen Miller filled out her employment application and lied on it stating she had a high school diploma from an out of state high school to hide the fact that she was not qualified for the job. He also offered her a car in her name and all expenses to be paid by Allen Miller. As the sexual relationship proceeded after that for approximately 10 months until Jessica broke it off. There were then threats from Allen Miller where he pulled out a gun and threatened to use it on anybody "who fucked with him." He also sent her text messages stating she was digging a hole for herself and emailed her photographs of him holding his erect penis and masturbating.

     After Jessica terminated the sexual relationship, she injured her arm moving a desk for the office. She filed a workers compensation claim which was controverted by Allen Miller and his gopher Samantha Grimmer. After a hearing, Jessica Grundstrom was granted workers compensation. Then Allen Miller through Samantha Grimmer told Jessica that since she was out on workers compensation she was no longer working there and her car and cell phone were going to be taken away and her job was no loner available. Shortly thereafter, they tried to rectify that by trying to offer her a part-time only job with no car, no benefits and a greatly reduced salary. Allen Miller paid her off on the car by having the car traded in and he paid her $3000 for the balance of the car.

     Jessica Grundstrom recovered from her injury and instead of returning to work, she resigned because of the harassment towards her that she was enduring, and probably would have to continue to endure if she went back to work at Carrier Coach, Inc. Allen Miller and Carrier Coach,

Inc., did not offer her a return to her prior job.

Allen Miller had complete and total control over Jessica Grundstrom as shown in emails and deposition testimony. His corporation had a Human Resources Department run by Samantha Grimmer who handled the issues of the employees. Allen Miller personally directed Samantha Grimmer on all of Jessica Grundstrom's issues. She was singled out over the other 499 employees as Allen Miller's personal captive.

Carrier Coach, Inc., and Allen Miller address several issues to urge the Court that there are no factual issues. There clearly are many disputed factual issues that would deny summary judgment under Rule 56. By the defendants ignoring the facts in the complaint or drawing conclusions or challenging facts, the complaint clearly shows that minimally there are issues and many facts that preclude summary judgment.

Defendants' first urged upon the Court some jurisdictional issues that the plaintiff has failed to obtain a notice of right to sue from the EEOC, therefore precluding their claims under Title VII.

The defendants urge a similar bar to the New York State Division of Human Rights, Executive Law §§296 & 297 claims because the plaintiff had elected remedies by filing a complaint with the Division of Human Rights.

Of note is that the defendants' Answer has no affirmative defenses regarding the plaintiff's failure to obtain a right to sue letter or electing remedies under New York State law. When the plaintiff filed her claims in the Division of Human Rights, and thereafter served a Summons & Complaint, the defendants did not move to amend their Answer to assert these defenses. Instead they removed the case to federal court, ignoring these issues that would preclude the case form being in federal court. Almost two years have passed since the complaints were served during which time the defendants had full access to the Division of Human Rights file and still neglected to this date to move to amend their answer asserting these defenses.

### THE DEFENDANTS HAVE WAIVED ANY OBJECTION TO THE PLAINTIFF'S EEOC FILINGS

The defendants state that once the plaintiff has filed a charge of discrimination to the

EEOC, she must then obtain a right to sue letter from the EEOC, or must allege or show that she made an effort to procure a right to sue letter or that she raised the EEOC's failure to issue a right to sue letter prior to filing the action. The defendants further state that the complaint contains no such allegations. As noted above, the Answer contains no such affirmative defense regarding a right to sue letter and the failure of the plaintiff to satisfy statutory prerequisites of pursuing her claim under Title VII.

Cited as *Francis v. City of New York,* 235 F3d 763 (2nd Cir. 2000), which cites the prior decision in *Pietras v. Board of Fire Commissioners,* 180 F3d 468 (2nd Cir. 1990)

> "...we held that "plaintiff's failure to obtain a notice of right to sue letter is not a jurisdictional bar, but only a precondition to bring a Title VII action that could be waived by the parties or the Court." at 474.

Having thus ruled, we then upheld the District Court's waiver of the right to sue letter requirement.

*Francis*, supra, stated

> "Defendants long delay in attacking the sufficiency of plaintiff's administrative exhaustion clearly constitutes a waiver of the exhaustion requirement, if that requirement is waivable. We hold that it is, and accordingly affirm under the grounds that the City waived any defense based on defects in administrative exhaustion."

The Court further stated that

> "Here, however, defendants neither alleged in their Answer any failure to exhaust administrative remedies, nor raised any problems with exhaustion, until after judgment had been entered."

Defendants, Carrier Coach, Inc., and Allen Miller, have not asserted an affirmative defense regarding this issue, nor have they moved to amend their answer to date, which is over a year and a half since the complaint was filed. Prior to the complaint being filed and served, there was a proceeding before the New York State Division of Human Rights, which had been concluded. The defendant obtained the full file and the correspondence between the Division of Human Rights (DHR) and the plaintiff and the plaintiff's attorney and orders withdrawing their claim and forwarding it to the Equal Employment Opportunity Commission (EEOC) for their action. The

EEOC finally did respond by acknowledging receipt of those letters, but failed to issue the right to sue letter.

And again cited obtaining a right to sue letter is a waivable precondition to sue, not a jurisdictional prerequisite.  See also *Canty v. Wackenhut Corr. Corp.,* 2558 Supp.2d 113 (ED NY 2003); *Zipes v. Trans World Airlines,* 455 US 385 (1982).

The *Francis* case, supra, which held that the 18th month delay without amending the answer or raising the issue created a waiver.  See also *Equal Employment Opportunity Commission v. International Association of Bridge, Structural & Ornamental Ironworkers, Local 580,* 139 F2d 512 Sd NY (2001) where the Court excused the plaintiff's failure to obtain a right to sue letter in light of the EEOC's 18 month delay in taking any action on behalf of the plaintiff.

**<u>PLAINTIFF HAS COMPLIED WITH ALL
NEW YORK STATE DIVISION OF HUMAN RIGHTS
RULES FOR BRINGING A COURT LAWSUIT</u>**

The defendant alleges that the plaintiff has not complied with the New York Executive Law §297(9) in that the Division had not dismissed the complaint on the grounds of administrative convenience.  The defendants then cite part of this section of the law which purposefully leaves out the controlling sections that are stated after their quote ends.  The section states as follows:

> 9.  Any person having claiming to aggrieved by a unlawful discriminatory practice shall have the cause of action in any court of appropriate jurisdiction for damages, including, in cases of housing discrimination, punitive damages and such other remedies as may be appropriate, including any civil fines or penalties provided in subdivisions 4 of this section, unless such person had filed a complaint hereunder or with any local commission on Human Rights or with the superintendent pursuant to the provisions of Section 296(a) of this Chapter provided that, where the Division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds of the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the Division. (The defendant's quote in their brief stops at this point). At any time prior to a hearing before a hearing examiner, a person who has a complaint pending at the Division may request that the Division dismiss the complaint and annul his or her election of remedies so the Human Rights Law claim may be pursued in Court and the Division may, upon such request, dismiss the complaint on the ground that such persons election of an administrative remedy is

5

> annulled.  Notwithstanding Subdivision (a) of Section 204 of the Civil Practice Law and Rules, if a complaint is so annulled by the Division, upon the request of the party bringing such complaint before the Division, such parties rights to bring such cause of action before a court of appropriate jurisdiction shall be limited by the statute of limitations in effect in such court at the time the complaint was initially filed with Division.

The defendants in their Memorandum state that the plaintiff voluntarily withdrew one of her State Division charges and the other was apparently never withdraw and cites the *Brown* declaration at page 4.  The plaintiff's exhibits "A-I" contain the transmittal letters from the Division of Human Rights to Jessica Grundstrom and copies to her attorney wherein she is requested to sign the form of her withdrawal of her complaint in order to initiate Court actions. These letters state that her complaints will be filed with the EEOC and to withdraw her complaints from both agencies you will have to sign these documents and return, which she did, and the request for withdrawal with the EEOC is subject to approval of the EEOC and will be acted on by that agency when received.  There are two separate letters for each one of the complaints being Case No. 10158799 and Case No. 10158483.  Also included in these exhibits are a separate package of an Order of Withdrawal and attached papers for each of these two complaints.  The letter to the plaintiff's attorney from the Division of Human Rights, dated March 18, 2013, states "Enclosed please find the withdraw letters which are to be signed by your client if you wish to proceed in federal court with the above referenced cases."

Defendants Memorandum also states that a voluntary withdrawal of a complaint pending before the State Division barred a subsequent lawsuit upon that complaint. Citing *Borum v. Village of Hempstead,* 590 F2d 376 (ED NY 2008), which was a claim that was litigated in an Article 78 proceeding and then brought in a complaint on the same issues in the complaint to the Division of Human Rights, Collateral estoppel was applied.  The plaintiff's request for withdrawl of the complaint was limited and did not effect the fact that the issues had been litigated under the Article 78 proceeding which was not withdrawn by the request to the Division of Human Rights claim.  That case cites *Emil v. Dewey*, 49 NY2d 968 (1980) which deals only with Section 296(9) where the complaint was dismissed for administrative convenience only.

6

Clearly the plaintiff has complied with Section 296(9) that any time prior to a hearing before a hearing examiner, the complainant can request the Division to dismiss the complaint and annul his or her election of remedies so that she could pursue her claim in court, which annuls the election of remedies so she can pursue her claim.  Further, if the complaint is so annulled by the Division, as it has been in this case, a party's right to bring an action in a court of appropriate jurisdiction, meaning federal or state court, shall be limited by the statute of limitations in effect in such court.

The plaintiff's exhibits were all contained in the Division of Human Rights file, a copy of which was obtained by the defendants, as well as the plaintiffs over a year and one half ago.

## THE INDIVIDUAL LIABILITY OF DEFENDANT MILLER UNDER TITLE VII

The plaintiff agrees with the basic proposition that an individual defendant cannot be held liable in the Title VII action, only the business can.  In our case, Allen Miller and Carrier Coach, Inc., are one and the same.  He is the sole owner and operator of the business and the sole actor with the plaintiff, Jessica Grundstrom, acting under the cover of Carrier Coach, Inc.  There is no *respondeat superior* liability assumed by Carrier Coach, Inc., for an employee since Allen Miller is Carrier Coach, Inc.  The liability of an individual under Title VII is based upon the *respondeat superior* relationship of an employee knowing of or participating in the alleged unlawful acts.  Allen Miller is not only the actor, he also takes the position of the person employer and is the investigator.  He is not a supervisor who received the complaint and he is not the person who investigates the complaint, he is the person who is both and the employer.  Under these circumstances, the cases stating that there is no individual liability do not apply.

Under New York law the individual harasser can be held individually liable.  See, *Father Belle v. New York State Division of Human Rights,* 221 AD2d 44 (4th Dept. 1996) which cites *Thoreson v. Penthouse Intl.,* 149 Misc.2d 150 (NY County 1990).  The *Thoreson* case states causes of actions against Penthouse and the corporation and the individual owner CEO, etc.,

Robert Guccione. Based upon the fact that Guccione utilized his power as an owner of the business and the actor to the sexual harassment of the plaintiff, he was found personally liable.

## THE PLAINTIFF'S CLAIMS UNDER EXECUTIVE LAW §§296 & 297 AND TITLE VII

The *Father Belle* case, supra, states that under New York law in order to recover against an employer, the complaint must state that the employer acquiesced in the discriminatory conduct or subsequently condoned it. Condonation by the employer contemplates after the fact forgiveness or acceptance of an offense. An employers calculated inaction response to discriminatory conduct may, as readily as affirmative conduct, be condonation. Condonation can be disproved by showing that the employer recently investigated the complaint of discrimination and took corrective action. None of these occurred in the instant case in that when Jessica Grundstrom complained to Samantha Grimmer, the complaint was not investigated and no action was taken. Participation by a superior officer in the course of his employment constitutes participation by the employer. See also the *Thoreson* case, supra.

> Any attempt by an employer to use the terms, conditions or privileges to coerce and employee, targeted on the basis of gender, to agree in sexual activity is a form of sex discrimination outlawed by the state law. Proof of such discriminatory conduct on the part of an employer suffices to trigger liability under the Executive Law. (Citation omitted).

The employee need not prove that he or she resisted the abuse or refused to comply with the sexual demands (citations omitted). As pointed out, Allen Miller and Carrier Coach, Inc., the employer, are one and the same, as in the *Thoreson* case. Miller not only was the harasser, but also directed and controlled all retaliation against Jessica Grundstrom for filing the workers compensation claim. This ended in Carrier Coach, Inc., and Allen Miller downgrading her job to the point of actually eliminating the job and never offering her regular job back. All the harassment by Miller to Jessica Grundstrom caused her to separate from Carrier Coach, Inc.

In the *Thoreson* case the Court found that Guccione had committed gross misbehavior and "A sort of hybrid between the display of ethical indignation and the imposition of a criminal fine." This coercive use of power by an employer to extract sexual compliance from an employee

severely undermines the Human Rights Law guarantee of equal treatment. Miller's subjugation of Jessica through the use of sexual coercion forced her to safeguard her employment by sacrificing her body. In so doing, she surrendered one of the most private and intimate aspects of her personal liberty, and unquestionably sexual harassment in the workplace is among the most offensive and demeaning torments an employee can undergo. *Thoreson*, supra,

> As employers who abused their dominate status by forcing a female employee to chose between compromising either her job or her personal dignity, defendants are guilty of attempting to induce plaintiff, because of her sex, into a position of servitude.

The Court found Guccione's action were so egregarious that it awarded punitive damages that was based upon Guccione's personal net worth and his business assets. This was to punish and to act as a deterrent to the defendant to deter him from repetition of his actions. This may be necessary to amend the plaintiff's complaint to assert punitive damages with Allen Miller. His sexual assault on employees and using his business and power over them has been a recurring pattern which has not stopped.

## **CONCLUSION**

Defendants' motion should be denied in its entirety.

DATED:     February 4, 2015

                           /s/ **Willard M. Pottle, Jr.**
                           Willard M. Pottle, Jr., Esq.
                           **LAW OFFICES OF JAMES MORRIS**
                           *Attorneys for Plaintiff*
                           350 Main Street, Suite 2405
                           Buffalo, New York 14202

TO:   Joseph S. Brown, Esq.
      HODGSON RUSS
      *Attorneys for Defendants*
      140 Pearl Street, Suite 100
      Buffalo, New York 14202-4040